UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

CURTIS ABRAHAM,

                Petitioner,

   - against -

WILLIAM LEE, Superintendent,
Green Haven Correctional Facility,

             Respondent.

----------------------------------------X

13 Civ. 2525 (RWS)

OPINION

A P P E A R A N C E S:

    PRO SE

    CURTIS ABRAHAM
    08-a-0994
    Green Haven Correctional Facility
    P.O. Box 4000
    Stormville, NY 12582-4000

    ATTORNEYS FOR RESPONDENT

    ROBERT T. JOHNSON
    District Attorney
    Bronx County
    198 East 161st Street
    Bronx, New York 10451
    By:  Peter D. Coddington, Esq.
         Kyonia L. Whetstone, Esq.

**Sweet, D.J.**

Petitioner Curtis Abraham ("Abraham" or "Petitioner") has petitioned for a writ of habeas corpus relief pursuant to 28 U.S.C. § 2254, alleging that he was deprived of effective assistance of counsel at trial and during his resentencing hearing. Petitioner further alleges that he was denied a speedy trial and his sentence of 20 years' imprisonment, with a concurrent term of 2 to 4 years' imprisonment, for his convictions of Manslaughter in the First Degree and Attempted Assault in the Second Degree, respectively, constitutes cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights.

Based on the conclusions set forth below, Petitioner's motion is denied.

## I.   Prior Proceedings

Petitioner's state custody arises from a judgment of conviction entered on November 15, 2007, in the Bronx County Supreme Court of the State of New York following a jury trial of Manslaughter in the First Degree (New York Penal Law ("Penal Law") § 125.20[1]), and Attempted Assault in the Second Degree (Penal Law §§ 110/120.05[2]). The court sentenced Petitioner as a second

violent felony offender to a determinate term of 20 years' imprisonment and a concurrent term of 2 to 4 years' imprisonment, respectively.

On June 28, 2007, the Appellate Division unanimously affirmed Petitioner's conviction but remanded for resentencing due to the prosecution's failure to file a predicate felony statement. *See People v. Abraham*, 66 A.D. 3d 412 (1st Dep't 2009).

In an Order dated February 23, 2010, the New York Court of Appeals denied Petitioner's application for modification of the judgment of his convictions. *People v. Abraham*, 14 N.Y.3d 769 (2010).

On April 22, 2010, the Bronx County Supreme Court of the State of New York resentenced Petitioner to a term of 20 years' imprisonment on the manslaughter conviction, and a concurrent term of 2 to 4 years' imprisonment on the attempted assault conviction. Whetstone Decl. ¶ 6.

In a Decision and Order dated March 23, 2011, the Bronx County Supreme Court denied Petitioner's motion (the "CPL 440 Motion," the court the "CPL 440 Court") to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL")

3

§ 440.10, seeing "no reason to change that conclusion or otherwise modify the conviction." *People v. Abraham*, 30 Misc. 3d 1240(A), at *2 (Bronx Co. Sup. Ct. 2011).

On August 4, 2011, the Appellate Division denied Petitioner's application for leave to appeal from an order of the Bronx County Supreme Court, stating that there was no questions of law or fact that ought to be reviewed by that court. Whetstone Decl. Ex 7. Subsequently, Petitioner filed a brief with the Appellate Division asserting that his sentence should be reduced and ineffective assistance of counsel. *Id.*, Exs. 8-10. On January 26, 2012, the Appellate Division unanimously affirmed Petitioner's conviction. *People v. Abraham*, 91 A.D.3d 555 (1st Dep't 2012).

In a letter dated March 2, 2012, Petitioner asserted that his sentence constituted cruel and unusual punishment when compared to the sentences of his co-defendants and sought leave to the New York Court of Appeals following the Appellate Division's affirmance of his judgment of conviction. Whetstone Decl. Exs. 11, 12. On April 16, 2012, the New York Court of Appeals denied Petitioner's application for leave. *People v. Abraham*, 18 N.Y.3d 991 (2012).

Petitioner submitted the instant petition on April 3,

4

2013. The Petitioner's motion was heard on submission and marked fully submitted on January 15, 2014.

## II.  **The Facts**

Petitioner's underlying conviction arises out of the shooting and killing of Tsishon Freeman ("Freeman") and injury of Freeman's brother, Delshawn Walker ("Walker").

### A. The Underlying Shootings

Petitioner's conflict with Freeman stemmed from Petitioner's relationship with Doreen Clyde ("Clyde"). Petitioner and Clyde dated for a period of time, but Petitioner's incarceration for an incident unrelated to the underlying shootings led Petitioner and Clyde to decide that Clyde was free to date other people while Petitioner was "away". Whetstone Decl. Ex. 9 at 3. During Petitioner's absence, Freeman became romantically involved with Clyde. Resp. Br. at 1. When Petitioner returned, Clyde ended her relationship with Freeman upon Petitioner's request. *Id.* at 1-2.

On September 17, 2005, Petitioner saw Freeman inside Clyde's apartment building at the Gun Hill Houses housing project

in the Bronx. *Id.* at 2. Freeman and Clyde were speaking out in the hallway in front of Clyde's ninth-floor apartment when Petitioner arrived. Whetstone Decl. Ex. 9 at 4. After leaving and returning to stare at Clyde and Freeman several times, a ten-minute verbal altercation ensued between Petitioner and Freeman. *Id.* at 5. The argument caught the attention of Walker and Freeman's friend, Raymond Cruz ("Cruz"), who approached Freeman and Petitioner. At this time, Petitioner walked away and went into a stairwell. Resp. Br. at 2.

Half an hour later, Freeman, Walker and Cruz boarded an elevator to leave the building. The elevator stopped on the second floor, and Freeman, Walker and Cruz stepped outside briefly to survey the surroundings. Whetstone Decl. Ex. 9 at 5. When they stepped back into the elevator, Petitioner, James Griffin ("Griffin") and Lamont Williams ("Williams") boarded the elevator. *Id.* The two groups started fighting, and Petitioner, Griffin and Williams started shooting at Walker, Freeman and Cruz. *Id.* Cruz, who was armed, returned fire. Freeman was shot six times and died. Walker was shot once in his left side, twice in his arm and upper shoulder, and once in his head and survived. Resp. Br. at 2.

    b.    **The Trial**

Petitioner, Griffin and Williams were jointly indicted for, among other crimes, the intentional murder of Freeman, the attempted murder of Walker, and the attempted assault of Cruz. Whetstone Decl. Ex. 1 at 3. Griffin and Williams each pled guilty to Manslaughter in the First Degree and received sentences of 10 years' and 8 years' imprisonment, respectively. Whetstone Decl. ¶ 9. Petitioner decided to proceed to trial.

At Petitioner's trial, Walker testified and identified Petitioner as one of the shooters. Resp. Br. at 2; T. 239-40. Walker was familiar with Petitioner as he would often go to Clyde's apartment to see his girlfriend Stacy, Clyde's cousin, who lived with Clyde. *Id.*

During the trial, Detective Anthony Gonzalez ("Detective Gonzalez") testified that he interviewed Laaiqua Jones ("Jones") who informed him that Williams came to her apartment with another individual, that Williams had a gunshot wound to his hands; that Jones and the other individual retrieved a bandana, baseball cap and ballistics evidence from the crime scene; and that Williams left the apartment with this other individual. Whetstone Decl. Ex. 9 at 7; T. 764-65. The individual not named at trial was Petitioner; Detective Gonzalez was instructed to not name Petitioner in his testimony. Resp. Br. at 13 n.8.

On November 15, 2007, the jury acquitted Petitioner of
Murder in the Second Degree and Attempted Murder in the Second
Degree, but convicted Petitioner of Manslaughter in the First
Degree and Attempted Assault in the Second Degree. Resp. Br. at 2.

### c.    Subsequent Appeals

On January 9, 2009, Defendant, by his assigned counsel,
filed a brief with the Supreme Court the State of New York,
Appellate Division, First Department ("Appellate Division"),
claiming that: (a) the trial court's missing witness charge was
erroneous, (b) the proof of his guilt was insufficient, (c)
defendant's sentence was excessive, and (d) the trial court
neglected to adjudicate Petitioner on a predicate felony
information. Whetstone Decl. ¶ 5; Ex. 1. In a decision dated June
28, 2007, the Appellate Division unanimously affirmed Petitioner's
conviction. *People v. Abraham*, 66 A.D.3d 412 (1st Dep't 2009). The
court found as follows:

> We reject [Petitioner's] challenges to the sufficiency
> and weight of the evidence supporting his attempted
> assault conviction (*see People v Danielson*, 9 NY3d 342,
> 348-349 [2007]). The evidence supports the inference
> that when [Petitioner] and the codefendants opened fire
> on the homicide victim and his companions in a small
> enclosed space, [Petitioner] intended to shoot all of

them.

> [Petitioner's] arguments concerning the content of the court's missing witness charge are unpreserved and we decline to review them in the interest of justice. As an alternative holding, we also reject them on the merits. The charge conveyed the proper standards and its content was appropriate to the case. In any event, any error in the language employed was harmless.

> Since the People failed to file a predicate felony statement, [Petitioner] was improperly adjudicated a second felony offender, and he is entitled to a remand for a proper adjudication and sentence. Since the defective second felony offender adjudication may have affected [Petitioner's] sentence on both the manslaughter and attempted assault convictions, we remand for a plenary resentencing.

Abraham, 66 A.D.3d 412.

In a letter dated October 20, 2009, Petitioner sought leave to appeal the Appellate Division's decision. Petitioner sought review of all of the issues raised in his Appellate Division brief, including the state and federal constitutional issues, and sought to hold his application in abeyance until after his resentencing. Whetstone Decl. Ex. 3. In an Order dated February 23, 2010, the New York Court of Appeals ("Court of Appeals"), denied Petitioner's application. *People v. Abraham*, 14 N.Y.3d 769 (2010).

On April 22, 2010, the Bronx County Supreme Court of the State of New York resentenced Petitioner to a term of 20 years' imprisonment on the manslaughter conviction and to a concurrent term of 2 to 4 years' imprisonment on the attempted assault conviction. Whetstone Decl. ¶ 6.

On May 19, 2010, Petitioner moved to vacate the judgment pursuant to CPL § 440.10, alleging ineffective assistance of counsel. Specifically, Petitioner claimed that counsel was ineffective for (a) failing to advise him to accept a plea bargain; (b) telling the jury in his opening statement that he fired shots at the victims; (c) failing to investigate until the day before trial; (d) failing to subpoena an alibi witness "who was later subpoenaed by the district attorney;" (e) neglecting to object to police testimony about the statement of Laaiqua Jones; (f) failing to attack the identification testimony of Walker; (g) not focusing the jury on the issue of identification during summation; and (h) not objecting to the trial court's adverse inference charge. Petitioner also alleged a violation of his right to a speedy trial. *Id.* Ex. 4. In a Decision and Order dated March 23, 2011, the CPL 440 Court denied Petitioner's motion to vacate the judgment of conviction. The court noted that the Appellate Division had previously rejected Petitioner's arguments concerning the missing witness charge, and saw "no reason to change that conclusion or

10

otherwise modify the conviction." *People v. Abraham*, 30 Misc. 3d 1240(A), at *2 (Bronx Co. Sup. Ct. 2011). Regarding Petitioner's remaining complaints about trial counsel's representation, the court held that Petitioner made "no showing whatsoever that trial counsel was deficient in failing to provide a meaningful defense in light of the circumstances presented." *Id.* The court also "reject[ed] any claim that tactical errors resulted in ineffective assistance of counsel warranting vacature." *Id.* at *3 (internal citations omitted). Furthermore, the court found that Petitioner failed to present a record to permit the court to make any conclusion that Petitioner's speedy trial rights were violated. *Id.* Petitioner's motion was denied in its entirety.

In *pro se* papers dated May 27, 2011, Petitioner applied for leave to appeal the decision of the CPL 440 Court. Petitioner raised the same claims that he presented in his CPL §440.10 Motion. In a Decision and Order dated August 4, 2011, the Appellate Division denied Petitioner's application stating that there were no questions of law or fact that ought to be reviewed by that court. *See* Whetstone Decl. Exs. 6, 7.

On August 10, 2011, Petitioner filed a brief with the Appellate Division, claiming that his sentence should be reduced because: (a) his co-defendants Griffin and Williams each pled

11

guilty to Manslaughter in the First Degree and received sentences of 10 years and 8 years, respectively; (b) he has a good prison disciplinary record and has furthered his education while in prison; and (c) the trial evidence was not overwhelming and suggests that he acted in self-defense. Petitioner also asserted that his attorney during his resentencing did not provide effective assistance of counsel because she did not remind the court that Petitioner had a statutory right to speak on his own behalf pursuant to CPL § 380.50(1). *See id.* Exs. 8-10.

In a decision dated Jan. 26, 2012, the Appellate Division unanimously affirmed Petitioner's conviction. The court found:

> [Petitioner's] constitutional claims regarding his sentence are unavailing, and we perceive no basis for reducing the sentence. [Petitioner's] claim that he received ineffective assistance of counsel at the resentencing proceeding is unreviewable on direct appeal because it involves matters outside the record. [Petitioner] asserts that counsel failed to bring to the resentencing court's attention [Petitioner's] alleged desire to make a statement. However, the record does not establish that [Petitioner] wished to address the court, and there is no information in the record as to any advice from counsel in that regard. On the existing record, to the extent it permits review, we find that [Petitioner] received effective assistance under the state and federal standards.

*People v. Abraham*, 91 A.D.3d 555 (1st Dep't 2012) (internal citations omitted).

In his letter dated March 2, 2012, wherein he sought leave to the Court of Appeals following the Appellate Division's affirmance of his judgment of conviction, Petitioner asserted that his sentence constituted cruel and usual punishment when compared to the sentences of his co-defendants. Petitioner also claimed that he was deprived of effective assistance of counsel at resentencing. *See* Whetstone Decl. Exs. 11, 12. In an Order dated April 16, 2012, the Court of Appeals denied Petitioner's application for leave. *People v. Abraham*, 18 N.Y.3d 991 (2012).

### d. The Instant Petition

Petitioner now seeks federal habeas corpus relief, claiming that trial counsel was ineffective for (a) failing to advise him to accept a plea bargain; (b) pursuing a claim of self-defense and telling tell the jury in his opening statement that he fired shots at the victims as well as not attacking the identification testimony of Walker; (c) not investigating Petitioner's case until the day before trial; (d) failing to subpoena an alibi witness "who was later subpoenaed by the district attorney"; (e) not objecting to police testimony about the statement of Laaiqua Jones; (f) not objecting to the trial court's "missing witness" charge; and (g) not informing the court of

13

Petitioner's desire to speak at his resentencing. Petitioner also alleges a violation of his right to a speedy trial and contends that his twenty-year sentence for manslaughter constitutes cruel and unusual punishment. Pet. at 7-8, 23-24.

## III. **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner "in custody pursuant to the judgment of a State court" can obtain habeas corpus relief only by showing that the state court's denial of his claims were either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The AEDPA sets a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). The AEDPA merely "preserves

authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no farther." *Richter*, 131 S.Ct. at 786. Indeed, "[28 U.S.C. §] 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* (internal quotations and citation omitted).

The deference extends to a federal court's examination of the record in a state court conviction. When examining the record, the state court's factual findings are presumed correct unless the petitioner rebuts that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding ... for a writ of habeas corpus ... a determination of a factual issue made by a State court shall be presumed to be correct. The [habeas] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"); *Thompson v. Keohane*, 516 U.S. 99, 111-112 (1995) (state courts' findings of facts are presumed correct). When the ultimate question is a legal determination, *i.e.*, whether the petitioner's right to counsel was violated, the factual questions underlying the ultimate legal determination are entitled to a presumption of correctness. *See Thompson*, 516 U.S. at 111-12 (even when the

15

ultimate question is a question of law, the "what happened," historical facts are entitled to a presumption of correctness); *LaTorres v. Walker*, 216 F. Supp. 2d 157, 167 (S.D.N.Y. April 12, 2000) (the presumption of correctness afforded to state courts' factual findings is particularly significant when those factual findings concern credibility issues because "the federal habeas corpus statute gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

## IV. <u>Petitioner Has Not Established Ineffective Counsel</u>

Petitioner contends that trial counsel made a multitude of errors during trial and at resentencing. Notwithstanding Petitioner's claims, none of these purported errors rise to the level of reversible error under *Strickland*.

The Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The Sixth Amendment "right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The Supreme Court has established a two-part test for evaluating claims of ineffective assistance. *Strickland*

*v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Morales v. United States,* 635 F.3d 39, 43 (2d Cir.2011). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* While the defendant must prove both deficient performance and prejudice, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the *433 inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S. Ct. 2052.

Under *Strickland's* first prong, there is a strong presumption that the assistance rendered by an attorney is objectively reasonable. 466 U.S. at 688–89, 104 S.Ct. 2052; *Roe v. Flores-Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("[J]udicial scrutiny of counsel's performance must be highly deferential") (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). The performance inquiry accordingly examines the reasonableness of counsel's performance "from counsel's perspective at the time" and "considering all the circumstances." *Strickland,* 466 U.S. at 688, 689, 104 S.Ct. 2052.

17

The second prong requires an affirmative showing of prejudice. 466 U.S. at 694-95, 104 S.Ct. 2052; *Gueits v. Kirkpatrick,* 612 F.3d 118, 122 (2d Cir.2010). The petitioner's burden with respect to prejudice is similarly stringent, as he must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *accord United States v. Caracappa,* 614 F.3d 30, 46 (2d Cir. 2010). "[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic,* 466 U.S. 648, 659 n. 26, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In applying this standard, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *accord Wilson v. Mazzuca,* 570 F.3d 490, 507 (2d Cir. 2009). "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

When a state court specifically decides a claim on the merits by applying *Strickland*, a court must grant deference to the state court's determination, and habeas review is "doubly"

deferential when taken in tandem with a *Strickland* claim. *Premo v. Moore*, 131 S.Ct. 733, 740 (2011) ("The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citations omitted)); *Harrington v. Ritcher*, 131 S.Ct. 770, 788 (2011); *see also Cortijo v. Bennett*, 422 Fed. Appx. 12, 15 (2d Cir. 2011). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 131 S. Ct. at 788. "[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). An unreasonable application of federal constitutional law differs from an incorrect application. *See Harrington*, 131 S.Ct. at 785; *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Because several state courts, including the Court of Appeals, adjudicated the merits of Petitioner's ineffective assistance claim, in order to obtain habeas relief Petitioner must prove "that the state court either identified the federal standard for ineffective assistance but applied that standard in an objectively unreasonable way, or that the state applied a rule that contradicts the federal standard." *Rosario v. Ercole*, 601 F.3d 118, 122 (2d Cir. 2010).

As an initial matter, it must be noted that Petitioner was represented by a twenty-year veteran attorney who negotiated a ten-year plea deal for Petitioner, T. 612-13, which was far less than the 25 years' to life imprisonment Petitioner was facing if convicted on the second-degree murder charge. Petitioner rejected this offer and opted for trial. Trial counsel was also able to obtain acquittals on two of the top counts charged, Murder in the Second Degree and Attempted Murder in the Second Degree. Counsel's advocacy for Petitioner at sentencing also resulted in a 20-year term of imprisonment, five years less than the maximum term of 25 years sought by the prosecutor for Manslaughter in the First Degree.

Furthermore, the state court found that Petitioner "received effective assistance under the state and federal

20

standards." *Abraham*, 91 A.D.3d at 556 (citing *People v Benevento*, 91 N.Y.2d 708, 713-714 (1998); *Strickland*, 466 U.S. 668). Substantial deference must be given to the state courts' conclusions, *see Premo*, 131 S.Ct. at 740, and Petitioner faces a high hurdle for his claims.

Discussion of the Petitioner's specific claims of ineffective assistance are as follows:

### a.    Plea Bargain Claim

An attorney's failure to communicate a plea offer to his client, or to advise his client adequately about the plea offer, may constitute constitutionally deficient assistance. *See, e.g.*, *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999); *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998). However, the petitioner must show that (1) the attorney failed to communicate a plea offer or provide adequate advice about the plea and sentencing exposure; and (2) there is a reasonable probability that but for the attorney's deficient performance, petitioner would have accepted the plea offer. *See Purdy v. United States*, 208 F.3d 41, 49 (2d Cir. 2000); *Cullen*, 194 F.3d at 404. The petitioner must provide objective evidence, beyond his own "self-serving, post-conviction testimony," that he would have pled

guilty had he received proper advice. *Gordon*, 156 F.3d at 380-381. Counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy*, 208 F.3d at 45. Counsel, however, must exercise good judgment in relaying the terms of any plea offer to the defendant, without coercing the defendant to accept a guilty plea, especially in a case where the defendant protests his innocence. *Id.* at 45-46; *see also United States v. Pitcher*, 559 F.3d 120, 125 (2d Cir. 2009)(the Circuit Court is "wary of endorsing any precedent that ... might suggest a duty on the part of defense counsel to arm-twist a client who maintains his innocence into pleading guilty.").

Petitioner contends that counsel failed to advise him to accept a plea offer. Pet. at 7, 24. This claim is refuted by the trial record. At trial, counsel stated that he discussed the prosecution's offer of 10 years' imprisonment with Petitioner and that Petitioner chose not to accept it. T. 612-613. Petitioner proclaimed at sentencing that he was not present at the shooting, S. 20, which corroborates counsel's assertion that Petitioner did not wish to plead guilty. Moreover, Petitioner only contends that counsel should have informed him to accept the plea because counsel was aware that his request for a "missing witness charge" had been denied. Pet. at 24. Petitioner does not assert that he would have

accepted the plea bargain or that he was otherwise prejudiced in some way by the alleged omission. No other facts corroborate any assertion that Petitioner would have accepted the plea bargain, and Petitioner's argument that he would have accepted the plea bargain instead of going to trial is belied by his continued claim of innocence. *See Alexander v. Walker*, No. 03 Civ. 8440 (NRB), 2004 WL 1857575 at *6-7 (S.D.N.Y. August 19, 2004)(in light of the petitioner's continued claim of innocence, even at sentencing, his claim that, if so advised, he would have accepted a plea offer is not credible); *Custodio v. United States*, 945 F. Supp. 575, 579 (S.D.N.Y. 1996) (due to defendant's continued claim of innocence, "his belated claim that he would have pleaded guilty is frivolous"). Given the Petitioner's insistence of his innocence, trial counsel's recorded assertions that Petitioner did not wish to accept a plea and lack of corroboration of his claim, counsel did not act in an objectively unreasonable manner and the state court was not unreasonable in rejecting Petitioner's claim. *See, e.g.*, *Berry v. Ercole*, 06 Civ. 6957(DLC), 2009 WL 1321906, *11-12 (S.D.N.Y. May 12, 2009); *Osorio v. Conway*, 496 F. Supp. 2d 285, 303-304 (S.D.N.Y. 2007). Petitioner claimed that he was innocent, and counsel did not have a duty to "arm-twist a client who maintains his innocence into pleading guilty." *Berry*, 2009 WL 1321906, at *12.

## b.   Self-Defense and Identification Claims

Petitioner contends that counsel was ineffective when he asserted, in his opening statement, that Petitioner fired gunshots at the victims in self-defense and because counsel did not focus the jury on the issue of identification during summations or attack Walker's identification testimony. Petitioner contends that counsel should have argued that he was not present at the crime scene. Instead, counsel's trial strategy was to argue that Freeman, Walker and Cruz were the aggressors and that Petitioner was defending himself when he shot Freeman and Walker.

There are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Counsel has "wide latitude" in "making tactical decisions." *Id.* In this regard, it is well settled that "[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage,* 555 F.3d 112, 122 (2d Cir. 2009) (citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," and even strategic choices made after less than complete investigation do not amount to

24

ineffective assistance so long as the known facts made it reasonable to believe that further investigation was unnecessary. *Strickland,* 466 U.S. at 690-91, 104 S.Ct. 2052. An attorney is under no obligation "to advance every nonfrivolous argument that could be made." *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001) (citing *Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)); *see also Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy.").

Despite Petitioner's contentions to the contrary, counsel's tactical decisions did not amount to ineffective assistance. Evidence within the record suggests that the trial strategy chosen by counsel was the more viable option given the evidence contradicting Petitioner's *post hoc*-offered alternative that he was not at the crime scene. Walker's eyewitness testimony identified Petitioner as one of the shooters, T. 239-40, and Petitioner had told law enforcement that he "fired his weapon in self-defense." *See* Resp. Br. at 8 (citing Trial Voir Dire at 3). The prosecution could also create to the jury a compelling motive for Petitioner to kill Freeman: Freeman was romantically involved with Clyde, Petitioner's love interest. Neither the motion court's

conclusion that the Petitioner was not prejudiced by counsel's performance nor counsel's decision to adopt a strategy that was supported by the evidence was objectively unreasonable. *See, e.g.*, *Jeremiah v. Artuz*, 181 F. Supp. 2d 194, 197, 204 (E.D.N.Y. 2002) (state court's determination that counsel's representation was not deficient or unreasonable where counsel raised self-defense in opening statement and defendant had admitted to shooting victim). With the evidence against Petitioner, counsel's strategy to claim self-defense was sound and not ineffective assistance. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir.1999) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices." (citations and internal quotation marks omitted)).

## c.   Investigation Claim

Petitioner claims that counsel did not investigate the case "until the day before trial where he took pictures." Pet. at 24. But Petitioner has made only a blanket assertion and has not shown ineffective assistance of counsel. The CPL 440 Court found Petitioner's allegation unpersuasive. *See Abraham*, 30 Misc. 3d 1240(A), 926 N.Y.S.2d 345. Similarly, Petitioner has failed, in this instant motion, to present clear and convincing evidence

supporting his claim that counsel failed to investigate the case until the day before trial or show that such an investigation, if Petitioner's claim is true, was objectively unreasonable. Petitioner's claim is too vague to show ineffective assistance under *Strickland*. *See, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-382 (W.D.N.Y. 2006) (petitioner's unsubstantiated claim of ineffective assistance based on counsel's alleged failure to adequately investigate and call witnesses "is simply too vague and conclusory to state a proper ground for habeas relief and, as such, must be dismissed.").

### d.  Alibi Witness Claim

Petitioner contends that counsel failed to subpoena an alibi witness. However, Petitioner does not specify which alibi witness counsel should have subpoenaed. In addition, counsel chose a self-defense strategy and it would have been imprudent to undermine that strategy by presenting an alibi witness to the jury. Counsel is not required to present every nonfrivolous defense to a jury, but should "winnow out weaker arguments" and present a case that reflects this choice. *Jones v. Barnes*, 463 U.S. 745 (1983). Presenting inconsistent defenses to a jury is a risky tactic, and foregoing this tactic does not make counsel ineffective. *See Matthews v. United States*, 485 U.S. 58, 68 (1988)

(Scalia, J., concurring); *see also Grimes v. United States*, 444 F. Supp. 78, 81 (S.D.N.Y. 1977) (counsel makes a strategically sound decision to exclude an alibi defense where a "purported alibi would seem so incredible to the jury ... and her testimony could only hurt [defendant's] cause"). Counsel's decision was sound and not ineffective assistance. *See, e.g.*, Henry v. Poole, 409 F.3d 48, 65 (2d Cir. 2005) (describing how counsel's pursuance of an alibi, where alibi witness's testimony appeared to be false, constituted evidence of the defendant's guilt); *Shaw v. Artuz*, No. 99 Civ. 9754 (JSM), 2001 WL 1645933, at* 1 (S.D.N.Y. December 21 , 2001) (counsel's decision not to call the alleged alibi witnesses but to concentrate on the weaknesses of the prosecution's case was a tactical decision that was within the range of tactical strategy); *Lafrance v. Mitchell*, No. 93 Civ. 0804 (TPG), 1996 WL 741601, at *2 (S.D.N.Y. December 27, 1996) (where counsel questioned possible alibi witnesses but did not call them to testify at trial, "it is quite evident that the decision to omit this defense was a sound one and that the basis for an effective alibi defense simply did not exist"); *Jonhson v. Mann*, No. 92 Civ. 1909 (TPGO), 1993 WL 127954, at *1 (S.D.N.Y. April 20, 1993)("As to the alibi issue, counsel made the strategic decision . .. to attack the credibility of the victim who had specifically identified petitioner rather than to rely on the inherently suspect testimony of family members.").

**e.    Statement of Laaiqua Jones**

Petitioner contends that counsel provided ineffective assistance when he failed to object to Detective Gonzalez's testimony on a statement made to Gonzalez by Jones. The Petitioner has failed to show objectively unreasonable performance by counsel on this issue. Petitioner does not provide any explanation as to how objecting to this particular portion of the testimony of Detective Gonzalez would have altered the results of the trial. Moreover, Counsel did object to a statement that was made prior to the Gonzalez statement at issue and that objection was sustained. T. 768-69. This suggests that counsel was aware of potential hearsay issues and chose to object to certain statements for strategic reasons. Further, the CPL 440 Court had previously found Petitioner's argument unpersuasive. *Abraham*, 30 Misc. 3d 1240(A), at \*2. Given the high standards Petitioner must meet, Petitioner has not met the showing required for ineffective assistance.

**f.    "Missing Witness" Charge Claim**

Petitioner contends, as he did on direct appeal and in his CPL 440 Motion, that counsel should have objected to the form of the trial court's missing witness charge. Pet. at 7. On direct

29

appeal, the Appellate Division found that Petitioner's arguments concerning the content of the court's missing witness charge were unpreserved as counsel never objected to the form of the charge. *Abraham*, 66 A.D.3d at 412. The CPL 440 Court also rejected Petitioner's claim, noting that the Appellate Division had previously rebuffed Petitioner's "missing witness" charge. *Abraham*, 30 Misc. 3d 1240(A), at *2.

As an initial matter, when a state court concludes that a claim is unpreserved for appellate review, this is "an independent and adequate state ground that bars a federal court from granting habeas relief." *Butler v. Cunningham*, 313 F. App'x 400, 401 (2d Cir. 2009) (citing *Coleman*, 501 U.S. at 750); *see also Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992). Further, the propriety of a state court's jury instructions is ordinarily a matter of state law and does not raise a federal constitutional question. *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *see also Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("federal habeas corpus relief does not lie for errors of state law .... it is ... limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). A petitioner has an "especially heavy" burden in demonstrating constitutional error based on an omission or failure to give an instruction because "[a]n omission, or an incomplete

instruction [to a jury instruction], is less likely to be prejudicial than a misstatement of law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Since Petitioner's contention rests on a missing witness instruction governed by New York state statute, Petitioner must show that the trial judge's instruction (1) violated New York law and (2) resulted in a deprivation of his right to due process. *See Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) ("Where an error in a jury instruction is alleged, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment. The question is not whether the trial court gave a faulty instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." (internal citations and quotation marks omitted)).

The trial court's instruction was proper and conveyed the appropriate legal standard. A request for a missing witness charge under New York law may be defeated where it is demonstrated that:

> [T]he witness is not in the "control" of the party who would have been expected to call him—that is, the witness, by nature of his status or otherwise, would not

31

be expected to testify favorably to one party and adversely to the other. A missing witness charge would be appropriate however, if it is demonstrated that the party had the physical ability to locate and produce the witness, and there was such a relationship, in legal status or on the facts, as to make it natural to expect the party to have called the witness to testify in his favor.

*People v. Gonzalez*, 68 N.Y.2d 424, 429, 502 N.E.2d 583 (1986).

Williams, the missing witness at issue, was originally slated to testify on behalf of the prosecution pursuant to a cooperation agreement. Whetstone Decl. Ex. 2 at 17. The prosecutor decided to not present Williams as a witness when Williams changed his story, *id.* at 17-19, so Williams was not under the prosecution's control. The prosecutor made this known to the judge and Petitioner's counsel and explicitly made Williams available to the defense counsel. *Id.* at 18, 20. Ultimately, the trial court delivered a charge that recognized that the prosecution did not call Williams as a witness. *Id.* at 21-22. The record shows that the trial court acted appropriately when it handled the missing witness charge, and Petitioner has not shown that counsel acted in an objectively unreasonable manner or that the CPL 440 Court erred in a manner reversible by this federal court when it upheld the missing witness charge. A fundamental principle of our federal system is "that a state court's interpretation of state law,

32

including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005).

### g.    Resentencing Claim

The trial court re-sentenced Petitioner on April 22, 2010. The court heard arguments from defense counsel and the prosecutor before imposing a sentence. Petitioner contends that counsel at his resentencing deprived him of effective representation because she failed to alert the court of his desire to speak before the court imposed his sentence. Pet. at 7-8.

The Appellate Division determined that Petitioner's claim was "unreviewable on direct appeal because it involves matters outside the record." *People v. Abraham*, 91 A.D.3d 555, *leave to appeal denied* 18 N.Y.3d 991 (2012). The court noted that "the record does not establish that [P]etitioner wished to address the court, and there is no information in the record as to any advice from counsel in that regard." *Id*. The court concluded that, to the extent the record permitted review, Petitioner received effective assistance under the state and federal standards. *Id*. at 556.

33

The Appellate Division's determination was not unreasonable. The record contains no indication that Petitioner objected or made the court aware that he wished to speak at his re-sentencing. Petitioner and counsel may have fully discussed this issue, and, based on their discussions, Petitioner may have decided to forgo saying anything at his resentencing. Without further information, it is impossible for a reviewing court to decide, based solely on the record's silence, that counsel performed ineffectively. As such, the Appellate Division's determination was proper under state law. *See, e.g.*, *People v. Figueroa*, 254 A.D.2d 226, 679 N.Y.S.2d 304 (1998) (claim was "not reviewable on direct appeal since it is based on facts dehors the record").

Petitioner's now contends that he had a right to speak at sentencing pursuant to CPL § 380.50(1). The Court of Appeals has held that so long as there is "substantial compliance" with the statute, there is no error. *People v. McClain*, 35 N.Y.2d 483, 491, 323 N.E.2d 685 (1974). This includes times when counsel speaks for the defendant and the defendant does not express a desire to speak. *Id.; see also Cammack v. State of N.Y.*, 457 F. Supp. 1190, 1197 (E.D.N.Y. 1978) ("[N]o basis for habeas relief arises unless there has been an affirmative denial of the opportunity to speak

or there are other aggravating circumstances." (citations omitted)).

There was substantial compliance with the statute. The court gave counsel ample opportunity to speak, and counsel made good use of it, requesting that the sentencing court lower Petitioner's sentence based upon Petitioner's "extraordinarily minor" prison disciplinary record; his educational progress while incarcerated; the letters from Petitioner's family; and the fact that Petitioner received a higher sentence than his co-defendants. S2. 6-8, 12-14. There is no evidence that counsel deprived Petitioner of an opportunity to speak at the resentencing. The Appellate Division's conclusion that Petitioner received effective assistance was not objectively unreasonable, and is entitled to deference here.

## V.  Petitioner Is Not Entitled To Habeas Relief For His Speedy Trial Claim

Petitioner contends that his right to a speedy trial was violated. However, Petitioner does not specify whether his claim is constitutional or statutory, nor does he provide any facts or evidence in corroboration of his claim. The CPL 440 Court previously rejected the same argument from Petitioner, finding

"there is no record presented upon which the Court can make any conclusion that [Petitioner's] rights were violated in this regard. The Court finds [Petitioner] fails to persuade that the judgment of conviction should not be overturned upon this ground." *Abraham*, 30 Misc.3d 1240(A) *3. With the Petitioner's lack of specificity in his allegations, the state court's finding is entitled to deference, and the Petitioner is not entitled to habeas relief. *See, e.g.*, *Erdheim v. Greiner*, 22 F. Supp. 2d 291 (S.D.N.Y. 1998) (petitioner failed to articulate any cogent theory on which speedy trial motion might have been made).

## VI. Petitioner's Sentence Did Not Violate His Eighth And Fourteenth Amendment Rights

Petitioner contends that the imposition of his twenty-year sentence for Manslaughter in the First Degree constituted cruel and unusual punishment as his co-defendants Griffin and Williams each pled guilty to the same charge and received sentences of 10 years and 8 years, respectively. Petitioner had previously made this claim in his Appellate Division briefs and leave application to the Court of Appeals. *See* Whetstone Decl. Ex. 1 at 44, Ex. 8 at 35. The Appellate Division rejected Petitioner's argument, and found that his "constitutional claims regarding his sentence [were] unavailing." *Abraham*, 91 A.D.3d 555.

36

It is well-established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (petitioner's Eighth Amendment sentencing claim was meritless since the sentence fell within the state statutory range); *see also McCall v. Rivera*, 965 F. Supp. 2d 311, 335 (S.D.N.Y. 2013) ("[C]laims of an unduly harsh sentence do not raise a cognizable federal constitutional issue if the sentence was within the range prescribed by state law."); *Diaz v. Herbert*, 317 F. Supp. 2d 462, 479-80 (S.D.N.Y. 2004) (same); *Gonzalez v. Travis*, 172 F. Supp. 2d 448, 457 (S.D.N.Y. 2001) ("It is well established that, when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as grounds for federal habeas relief." (internal quotation marks omitted)).

Petitioner was sentenced to twenty years' imprisonment, five years less than the maximum term of 25 years for Manslaughter in the First Degree. Notwithstanding Griffin's and Williams' sentences, Petitioner has made no claim of a recognizable federal constitutional issue given that his term of imprisonment was within the statutory range. Moreover, Petitioner's sentence was appropriate even in light of Griffin's and Williams' sentences. "The determination of an appropriate sentence requires the

37

exercise of discretion after due consideration given to, among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, *i.e.*, societal protection, rehabilitation, and deterrence." *People v. Farrar*, 52 N.Y.2d 302, 305 (1981). Petitioner alone provided the motivation and moving force to shoot Freeman. Both Griffin and Williams accepted plea offers and admitted to their roles in the shooting while Petitioner denied any wrongdoing and went to trial, factors that can warrant a higher sentence. *See, e.g., Clark v. Bennet*, No. 98 Civ.1445 (FB), 1999 WL 360205, *8 (E.D.N.Y. 1999) (disproportionate sentences warranted where defendant received higher sentence after trial than did co-defendants pursuant to their plea bargains). Petitioner also rejected the prosecutor's offer of 10 years, a plea offer that was more lenient than the potential maximum sentence Petitioner could have received for his conviction. The subsequent harsher sentence after a guilty verdict that is within the statutory terms was not a violation of Petitioner's constitutional rights. *See United States v. Cruz*, 977 F.2d 732, 733 (2d Cir. 1992) ("Courts have long recognized that trial judges are entitled to encourage guilty pleas by imposing on a defendant who pleads guilty a lesser sentence than would have been imposed had the defendant stood trial .... Though that 'discount' means, in effect, that a defendant who stands trial receives a higher

sentence than would have been imposed if he had pled guilty, courts have accepted the traditional 'discount' approach, apparently on the rationale that the reduced sentence for a guilty plea represents a reduction from a sentencing norm ascertained independent of the procedure by which guilt is ascertained. A sentence imposed upon a defendant who stands trial is that norm; it is not an enhancement above the norm as a cost of standing trial"). Accordingly, the sentence imposed on Petitioner was fair and proper, and Petitioner is not entitled to habeas relief for this claim.

## VII. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *see also United States v. Perez*, 129 F.3d 255 (2d Cir. 1997); *Lozada v. United States*, 107 F.3d 1011 (2d Cir. 1997). Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

It is so ordered.

New York, NY
July  17, 2014

_____
ROBERT W. SWEET
U.S.D.J.